UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE PIRES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:20-cv-1073-KJN<br><br><u>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT</u><br><br>(ECF Nos. 18, 21) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in assessing the severity of one of his impairments and in evaluating his subjective symptom testimony.  (ECF No. 18.1.)  The Commissioner filed a cross-motion for summary judgment, contending the decision is

---

[1]    This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 3, 7, 9.)

    DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a).  Where the standards for each benefits system align, the court cites only the DIB statutes and regulations.

supported by substantial evidence and free from legal error. (ECF No. 21.) Upon consideration of the record and briefing, the court DENIES the Commissioner's cross-motion for summary judgment, GRANTS plaintiff's motion, and REMANDS for further proceedings.

## I. RELEVANT LAW

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2] 20 C.F.R. § 404.1520(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may only review the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

---

[2] The sequential evaluation is summarized as follows:
  **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
  **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
  **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
  **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154.  Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id.  Further, the court may not reverse the ALJ's decision on account of harmless error.  Id.

## II.   BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On April 11, 2017, plaintiff applied for DIB and SSI, alleging a disability onset date of March 24, 2017, for DIB and April 7, 2017, for SSI.  (Administrative Transcript ("AT") 280, 282, electronically filed at ECF No. 11.)  Plaintiff alleged disability due to back pain, knee pain, arthritis, and high blood pressure.[3]  (AT 190, 321.)  Plaintiff's applications were denied initially and again upon reconsideration.  (AT 181-85, 189-94, 196-01.)  Plaintiff, aided by the same attorney who represents him in this court, sought review of these denials with an Administrative Law Judge ("ALJ").  (AT 207-08.)  The ALJ held a hearing on December 13, 2018, where plaintiff testified about his conditions and a Vocational Expert ("VE") testified about plaintiff's ability to work.  (AT 104-29.)

On February 6, 2019, the ALJ issued a decision determining plaintiff was not disabled from his onset date forward.  (AT 17-28.)  At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his earliest alleged onset date of March 24, 2017.  (AT 20.)  At step two, the ALJ determined plaintiff had the following severe impairments:  degenerative disc disease, degenerative joint disease in both knees, obstructive sleep apnea, and diabetes mellitus.  (Id.)  At step three, the ALJ determined plaintiff was not disabled under the listings.  (AT 21-22, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.)

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following exceptions:

> [He] can occasionally climb ramps, stairs, ladders, ropes and scaffolds; and he can occasionally balance, stoop, kneel, crouch, and crawl. He can do no work with concentrated exposure to extreme cold, vibration, unprotected heights, or heavy moving machinery.

---

[3] Plaintiff also alleged certain mental impairments which are not discussed in this order because plaintiff does not challenge the ALJ's findings as to those impairments.

(AT 22.)

At step four, based on the VE's testimony, the ALJ found that plaintiff was not capable of performing his past relevant work as a machinist, truck operator, or demolition construction worker; however, he could perform other jobs that existed in significant numbers in the national economy. (AT 26-28.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 28.)

After receiving additional records, the Appeals Council denied plaintiff's request for review on April 1, 2020, making the ALJ's decision the final decision of the Commissioner. (AT 1-5.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 18, 21.)

### III. ISSUES PRESENTED

Plaintiff argues the ALJ erred by: (1) not finding one of his conditions—hypertension/high blood pressure—to be severe at step two; and (2) discounting plaintiff's subjective symptom testimony without articulating legally sufficient reasons. (ECF No. 18.1 at 12.) The court finds no error on the first issue but concludes that remand is warranted on the second issue.

### IV. DISCUSSION

#### A. Step Two Severity Assessment

##### *Legal Standard*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1522(a). An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation omitted). "Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017); see Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("the step-two inquiry is a

de minimis screening device to dispose of groundless claims" (internal citations and quotation marks omitted)). "It is not meant to identify the impairments that should be taken into account when determining the RFC." Buck, 869 F.3d at 1048-49.

### *Analysis*

Plaintiff argues briefly that the ALJ erred by not including essential hypertension/high blood pressure as a severe impairment at step two. (ECF No. 18.1 at 13.) The ALJ found four of plaintiff's medical impairments to be severe, but he did not discuss plaintiff's hypertension at step two or at any other point in the sequential evaluation. (AT 20.) While the ALJ should have explained his implied finding that plaintiff's hypertension was not severe, substantial evidence supports the ALJ's step two determination, and any error in that determination was harmless.

Substantial evidence supports the ALJ's non-severe categorization of plaintiff's hypertension because, although plaintiff's hypertension is well documented throughout the medical record, there is no accompanying mention of any work-related limitations caused by the hypertension. See Carmickle v. Comm'r, 533 F.3d 1155, 1164-65 (9th Cir. 2008) (concluding that ALJ did not err in classifying condition as non-severe at step two in part because "the medical record does not establish any work-related limitations as a result of this impairment").

Plaintiff was diagnosed with hypertension as early as September 2007, some ten years before submitting the instant social security applications. (AT 38, 487, 506.) As plaintiff points out, his blood pressure readings fluctuated over the relevant disability period, all coming in above the normal 120/80 mark. (AT 78, 497, 503.) However, plaintiff points to nothing in the record that indicates this high blood pressure limited his ability to work—nor has the court found any. The Commissioner identifies numerous occasions when plaintiff denied symptoms frequently associated with hypertension. (See AT 490, 496, 510, 556, 560, 563, 570, 573, 683, 689, 710, 824 (denying chest pains, palpitations, rapid heartbeat, or shortness of breath); AT 458, 557, 560, 563, 570, 573 (denying dizziness, headaches, loss of consciousness, and seizures).) And plaintiff directs the court to no affirmative complaints of such symptoms—except for plaintiff's self-reports during the course of seeking disability benefits that his blood pressure medications caused him fatigue, drowsiness, dizziness, and muscle pain. (AT 116, 329, 398.) Plaintiff's contention

that these side effects "could also be due to hypertension" (ECF No. 18.1 at 13) does not fill the void in the record before the ALJ.  And plaintiff's apparent ability to continue working for many years after being diagnosed with hypertension—combined with his consistent denial of associated symptoms—supports the ALJ's decision not to classify the condition as severe.

Plaintiff understandably calls attention to the findings of the state agency doctors[4] who both identified his essential hypertension as "severe" on initial review and on reconsideration.  (AT 135, 159.)  But these same practitioners opined that plaintiff could perform "medium" work with certain environmental and postural limitations, even with that degree of hypertension.  (AT 145, 161-63.)  Thus, the agency doctors' classification of hypertension does not erode the substantial evidence supporting the ALJ's classification.

Plaintiff also points to the medical consultative examiner's ("CE") diagnosis that his blood pressure was elevated and "not controlled."  (AT 483, 485.)  But the CE expressly noted that this finding was because plaintiff had been out of his blood pressure medications and was only recently put back on them.  (AT 483.)  The CE also ultimately opined that plaintiff could perform the equivalent of medium work with certain postural limitations, despite his contemporaneous uncontrolled high blood pressure.  (AT 485.)  Without any indication that plaintiff's hypertension "significantly limits [his] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), the undersigned cannot conclude that the ALJ erred at step two.

Even assuming error, though, for the same reasons just discussed any error in classifying plaintiff's hypertension as non-severe was harmless, at most.  See Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if it is not prejudicial to claimant and "inconsequential" to ALJ's "ultimate nondisability determination").  Here, the ALJ found other impairments severe at step two and proceeded to subsequent steps of the sequential disability evaluation process.  And he ultimately adopted an RFC that aligns with the consistent opinions of the state agency doctors and the CE—the only three doctors who rendered opinions of plaintiff's

---

[4] These are now referred to as "prior administrative medical findings," see 20 C.F.R. § 404.1513(a)(5).

physical impairments in this case. Each of these doctors expressly considered any limitations associated with plaintiff's hypertension in rendering their medium-work RFC opinions, which were ultimately adopted. Thus, categorizing plaintiff's hypertension as severe would not have changed the outcome of the nondisability determination. See Stout, 454 F.3d at 1055. Plaintiff's citation to Robert R. v. Berryhill, 2019 WL 538994 (C.D. Cal. Feb. 11, 2019) does not support his assertion of harmful error because in that case, unlike the present one, the ALJ found no severe impairments and did not proceed beyond step two at all. Id. at *1, *5.

However, because remand is warranted on the handling of plaintiff's subjective testimony, the ALJ is instructed to make explicit his step-two findings as to the severity of plaintiff's hypertension on remand.

**B. Plaintiff's Subjective Symptom Testimony**

***Legal Standard***

In evaluating a claimant's symptoms testimony, the following two-step analysis applies:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant is not required to show the impairment caused the severity of the symptom alleged, nor required to produce objective medical evidence thereof. Instead, the claimant only need show the impairment could reasonably have caused some degree of the symptom. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (noting the clear and convincing standard is not easy to meet, and is "the most demanding [standard] required in Social Security cases").

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014).

Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, inconsistencies between a claimant's testimony and their conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Broadly speaking, a claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

***Analysis***

The ALJ accurately summarized plaintiff's description of the symptoms preventing him from working—as reported to the CE at the June 2017 examination, in a September 2017 Function Report (9E), and to the ALJ at the December 2018 hearing:

> The claimant alleged inability to work due to aches, arthritis, back and knee pain, and diabetes. He reported that he had the side effect of drowsiness from pain medications, he reported to have difficulty sitting and standing for long periods. The claimant testified he wore a knee brace and underwent injections for pain. He testified that he spent most of the day lying down, and his wife did most of the chores. He reported he was limited to lifting 10 pounds. (9E) He alleged difficulty with bending, standing, kneeling, reaching, walking and climbing stairs. (9E) He reported he could sit, stand and walk for one half hour. (9E)

(AT 23.)

The ALJ found that plaintiff's impairments could reasonably be expected to cause these symptoms (satisfying the first step of the subjective testimony analysis), but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.) Ultimately, the ALJ determined that plaintiff had the RFC to perform medium work[5] with "occasional" postural limitations in the areas described by plaintiff

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or

"[d]ue to [his] degenerative joint disease with many normal exams but for tenderness," and excluding certain work environments "to account for his [obstructive sleep apnea]." (AT 24.) Thus, although never explicitly parsed in the decision, it appears the ALJ discounted plaintiff's subjective testimony that he was unable to work due to his back and knee pain and that he could lift no more than 10 pounds.

The ALJ gave three overarching reasons for discounting these aspects of plaintiff's symptoms testimony: (1) inconsistency with the medical evidence; (2) inconsistency with a history of routine conservative treatment; and (3) inconsistency with his level of daily activities. (AT 23-25.) The court considers each in turn, taking them in reverse order.

As to daily activities, the ALJ found that, "[d]espite his impairments," plaintiff had "engaged in a somewhat normal level and range of daily activities and interactions." (AT 25.) The ALJ cited two sources of testimony in support. First, he recited the CE's description of plaintiff's activities of daily living as related in the June 2017 consultative exam, noting plaintiff's ability to perform his own hygiene tasks, cook, do dishes, mop, vacuum, do laundry for 20-30 minutes, mow the lawn with a self-propelling mower, attend church weekly, shop, and drive. (Id. (citing AT 481-82).) Second, the ALJ described plaintiff as having reported to his physical therapist in August 2017 that he "could walk for 45 minutes and walked three blocks several times a week." (Id. (citing AT 493).) Based on these two sources of testimony, the ALJ found plaintiff's daily activities were not as limited as one would expect for someone with plaintiff's complaints of disabling symptoms and limitations. (Id.)

This is not a "specific, clear and convincing reason" for discounting plaintiff's testimony because it is based on a selective reading of plaintiff's reported activities. See Revels, 874 F.3d at 655. First and most problematically, nowhere in the ALJ's discussion of plaintiff's reported daily activities does the ALJ account for the significantly more limited activities plaintiff described at the December 2018 administrative hearing, as compared to the 2017 sources cited in the written decision. For instance, plaintiff testified at the hearing that he and his wife used to go to church

---

carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

9

weekly but they no longer went because he couldn't stand. (AT 120.) Plaintiff also testified that he <u>used to</u> do household chores but now his wife did "most of the cooking and the cleaning" while he "la[id] down." (AT 121.) In summarizing plaintiff's testimony two pages earlier in the decision, the ALJ acknowledged plaintiff testifying that he "spent most of the day lying down" while his "wife did most of the chores." (AT 23.) It is therefore unclear why the ALJ reverted to plaintiff's description of his daily activities from over a year prior in assessing the intensity and persistence of plaintiff's symptoms. Regardless, it was error to rely on the portions of this earlier testimony that were contradicted by plaintiff's more recent testimony without addressing the conflict.

Leaving aside the improperly relied upon household chores and church-going, the ALJ had before him only plaintiff's weekly lawn mowing, driving, and shopping, in addition to plaintiff's walks several times a week. As for the walking routine, the ALJ omitted from his description that plaintiff also reported needing to lie down for 30 minutes after walking for 45 minutes in order to control his pain. (AT 493.) The full extent of the physical therapist's note regarding plaintiff's subjective symptoms at his August 9, 2017 visit (his second visit to that office) was that plaintiff

> [s]tates that his back pain is relatively the same, although he has been able to walk more with less pain. Will walk 3 blocks several times a week. Can walk as long as 45 minute with his back having increased pain slightly afterwards. Still has [control] of pain with laying supine for 30 minutes.

(Id.) Plaintiff's testimony on this subject at the administrative hearing was consistent, if not describing greater limitation. (AT 116 ("My walks are very limited to about a half hour. If I can. Then I end up coming home and laying down. I can't do that no more.").) The ALJ failed to acknowledge that plaintiff's description of his ability to walk—both to his physical therapist in 2017 and to the ALJ in 2018—was more limited than simply being able to walk for 45 minutes several times a week. Without accounting for plaintiff's self-described need to lie down afterward or the fact that plaintiff was apparently walking only three blocks in 45 minutes, the ALJ's reliance on plaintiff's walking routine was not a clear and convincing reason to discount his testimony of a disabling level of back pain.

10

As for the lawn mowing, shopping, and driving, none of these activities were discussed at the administrative hearing. Plaintiff self-reported on his September 2017 Function Report that he mowed the lawn for half-an-hour weekly, could drive a car, and shopped online for groceries to be delivered once a week. (AT 370-71.) The CE specified that plaintiff mowed the lawn with a self-propelled mower. (AT 481.) Even assuming the lawn mowing required significant exertion, the record shows that this activity did not take up a "substantial part" of plaintiff's days. See Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) ("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." (emphasis added)). Nor is there any indication that shopping online or driving a car—two very low-exertion activities—made up the difference. Thus, the purported inconsistency between plaintiff's pain symptom testimony and his activities of daily living was not a clear and convincing reason to discount plaintiff's testimony.

Turning to the second reason given by the ALJ, the record does not support the characterization that plaintiff received merely "routine conservative treatment" for his complaints of back and knee pain. (AT 24.) Plaintiff ably and accurately describes the trajectory of his treatment for these symptoms over the years, acknowledging that while the treatments started conservatively, they progressed to opioid-grade medication, an epidural spine injection, cortisone injections in his knees, and being scheduled for knee surgery after the ALJ hearing. (ECF No. 18.1 at 19-20 (citing AT 496, 509, 590, 636, 805, 823, 873); see AT 117-18 (plaintiff's hearing testimony regarding injections in back and knees), AT 823-25 (Nov. 2018 treatment note referencing prior "epidural injection through spine clinic with temporary relief (< 1 month)" and increasing Tramadol prescription), AT 590 (Jan. 2018 physical therapy note reflecting that cortisone injection in Nov. 2017 helped for 3 weeks but that pain was worsening again), AT 632 (Feb. 2018 treatment note stating plaintiff had two costicosteroid injections); see also AT 79 (post-hearing Feb. 2019 record submitted to the Appeals Council showing plaintiff was scheduled for upcoming arthroscopic knee surgery in Mar. 2019).)

Prescription narcotics and epidural injections for pain are generally not considered

11

conservative treatment. Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Greer v. Berryhill, No. 1:16-CV-0042-JLT, 2017 WL 3537132, at *9 (E.D. Cal. Aug. 17, 2017). The ALJ indicated awareness that plaintiff took Tramadol and received injections for pain. (AT 23 (first describing plaintiff's testimony regarding "injections for pain," and then stating that plaintiff "underwent epidural injections with some relief").) But in discounting plaintiff's pain testimony, the ALJ cited only the early measures of home exercises, compression braces, and ibuprofen for plaintiff's knee pain. (AT 25.) The record does not substantially support the ALJ's finding that the treatment plaintiff received for his knee and back pain was inconsistent with his pain allegations.

Appearing to concede this point, the Commissioner does not defend the merits of the ALJ's characterization of plaintiff's treatment as conservative,[6] instead arguing only that any error on that score was harmless because the ALJ provided other valid reasons for discounting plaintiff's testimony. (ECF No. 21 at 12.) The problem with this argument is that the only other reason the ALJ gave for discounting plaintiff's pain testimony was its inconsistency with the objective medical evidence of record—and it is well established that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

The ALJ primarily relied on a lack of corroborating objective medical evidence to support his decision to discount plaintiff's testimony that he could not work because of his knee and back pain. (AT 23-24.) This is, of course, a common and entirely permissible line of inquiry when assessing the severity of a claimant's pain and its limiting effects. See Rollins, 261 F.3d at 857

---

[6] Therefore, the court need not wade into the debate over whether or when injections qualify as conservative treatment. See generally Alexander C. v. Saul, 2020 WL 6321765, at *4 (C.D. Cal. Oct. 28, 2020).

("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). However, the ALJ must also articulate at least one other valid reason for discounting plaintiff's pain testimony. Id. He did not do so in this case.

The Commissioner argues that the ALJ gave a slightly different set of reasons for discounting plaintiff's pain testimony: (1) "inconsistency with the evidence," (2) "inconsistency with daily activities", and (3) "inconsistency with the unchallenged medical opinion and prior administrative findings." (ECF No. 21 at 12.) The undersigned finds, however, that the ALJ's written decision does not in fact express the Commissioner's third-identified reason—inconsistency with the medical opinion evidence—as a reason for discounting plaintiff's pain testimony.

According to the Commissioner, "the ALJ noted Plaintiff's subjective allegations were contradicted by the opinions of" the CE and the state agency doctors, all of whom opined that plaintiff was capable of a range of medium work. (Id. at 10 (citing AT 25-26).) The ALJ indeed addressed all three medical opinions, but he did so only in the course of explaining his determination that each was persuasive and supported the RFC. (AT 25-26.) A close reading of this portion of the written decision reveals no statements by the ALJ indicating that he was discounting plaintiff's pain testimony because of any contradiction with the medical opinions rendered. Giving such a reason is a sufficient basis for rejecting pain testimony (assuming the record substantially supports it), see Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008), but the ALJ simply did not give that reason here.

The only arguably valid reason the ALJ actually gave for discounting plaintiff's pain testimony was that, based on his review of the objective medical evidence, "there are no findings in the record to corroborate [plaintiff's] allegations of the need to lie down, with difficulty standing, walking and sitting and lift more than 10 pounds." (AT 25.) Because this cannot be the

only basis to discount such testimony, remand is required even assuming the ALJ's analysis of the objective medical evidence was clear and convincing.  See Rollins, 261 F.3d at 857; Burch, 400 F.3d at 681.

On remand, the ALJ should address several of the issues plaintiff identifies in the present analysis of the medical evidence as it pertains to evaluating plaintiff's pain testimony.  First, the ALJ should not rely on records predating plaintiff's earliest alleged onset date of March 24, 2017 (AT 280) to discount plaintiff's pain testimony, without providing some explanation of their relevance.  (See AT 23, 24 (citing exhibits 12F/4, 17, 20 from 2015).)  See Savolt v. Berryhill, 2018 WL 1661820, at *4 (D. Or. Mar. 16, 2018) (ALJ erred in interpreting pre-onset medical evidence as inconsistent with plaintiff's subjective symptom testimony; noting that pre-onset records "may provide context documenting a plaintiff's worsening impairments, see Fair v. Bowen, 885 F.2d 597, 600 (9th Cir. 1989)," but that pre-onset records "are of limited relevance in assessing Plaintiff's testimony after her disability onset date"); Fong v. Colvin, 2016 WL 1695347, at *7 (C.D. Cal. Apr. 27, 2016) ("Absent any explanation from the ALJ as to the relevance of such pre-onset evidence to petitioner's case, such evidence erroneously suggested that petitioner's post-onset condition was less severe than plaintiff alleged."); cf. Carmickle, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

Second, the ALJ should provide pinpoint citations to any cited exhibits that comprise more than 10 pages of records, unless they are being cited for the most general of propositions.  (Cf. AT 24 (citing exhibit 13F, comprising 224 pages of records, for proposition that there were "many normal exam findings").)

Third, when evaluating the intensity and disabling effects of plaintiff's pain against the medical evidence, the ALJ should specifically identify the aspects of the medical record that conflict with plaintiff's reported pain.  For instance, it is not clear in the current written decision how a doctor's note that plaintiff had "[o]ccasional lumbar radicular pain but no weakness, sensory changes, saddle anesthesia, loss of bowel or bladder function" in any way conflicts with plaintiff's complaints of back pain.  (AT 867, cited at AT 24.)

Fourth and finally, the ALJ should explicitly address how the side effects plaintiff described from his medications factor into the evaluation of plaintiff's symptoms. (Cf. AT 23 (acknowledging side effect testimony without subsequent analysis).)

The case is remanded for further proceedings, rather than for an immediate award of benefits, because a significant factual conflict remains apparent in the record. See Brown-Hunter v. Colvin, 806 F.3d 487, 496 (9th Cir. 2015) (identifying a "significant factual conflict in the record that should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance," rather than crediting claimant's testimony as true). At a minimum, the three uncontradicted medical opinions that plaintiff was still capable of performing a range of medium work raise "crucial questions" as to whether plaintiff's pain is in fact debilitating. See id. at 495-96 (remanding for further proceedings where "the record raises crucial questions about the extent to which [claimant]'s pain and accompanying symptoms render her disabled").

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 21) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 18) is GRANTED;
3. The final decision of the Commissioner is REVERSED AND REMANDED for further proceedings; and
4. The Clerk of Court shall issue judgment in plaintiff's favor and CLOSE this case.

Dated: August 27, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

pire.1073